UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JALIEN GARDNER, | ) |
| *Petitioner,* | ) ) ) |
| v. | ) 2:23-cv-00081-JPH-MJD |
| DUSHAN ZATECKY[1], | ) ) ) ) |
| *Respondent.* | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Jalien Gardner has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. He challenges a prison disciplinary proceeding in which he was found guilty of conspiracy to traffic drugs and sanctioned with a 180-day loss of good-time credit, along with other non-custodial sanctions not relevant to this proceeding. Dkt. 9-4. For the reasons explained below, the disciplinary proceeding did not violate Mr. Gardner's due process rights and his habeas petition is **DENIED**.

---

[1] Petitioner Jalien Gardner was most recently in custody at Putnamville Correctional Facility, so the proper respondent is Dushan Zatecky, Warden of Putnamville Correctional Facility. The **CLERK is DIRECTED** to update the docket to reflect that Dushan Zatecky, in his official capacity, is the proper Respondent.

# I.
# Legal Background

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

# II.
# Factual Background

On November 9, 2022, Lead Investigator R. Patton wrote a Conduct Report charging Mr. Gardner with conspiracy to traffic. Dkt. 9-1 at 1. The Conduct Report states:

> On 11/9/2022 at approximately 10:00 a.m., I Lead Investigator R. Patton concluded a review of phone calls made by Jalien Gardner IDOC #250285 to former [Heritage Trail Correctional Facility] staff member Christine Taylor between 11/2/2022 and 11/8/2022 (transcripts attached). Throughout several calls, Gardner and Taylor discuss Taylor picking up a bag of "dog food", which is common slang for heroin. Taylor was then supposed to meet a female on Saturday 11/5/2022 and Gardner said, "Did you tell her you was gonna make sure she was tooken care of?" [sic] Throughout

2

> the rest of that call, Gardner makes comments including, "make sure everything goes smoothly", "see what she can handle", "I want it to be worth it", and "I'ma go with the deal unless yall came up with, you know what I'm sayin, unless yall two girls come up with something else." [sic] The next day, Gardner asked Taylor "How many did yall get?" [sic] She replied "15". Gardner later said, "need you to really talk to her and make it happen", and "make sure they ain't in no hot environment". [sic] On 11/4/2022, Gardner makes a call in which he says, "Just gotta figure it out, you know, like I gotta go with it, you know what I'm sayin, somewhere else." [sic] Later in the same call, Gardner said, "I'm trying to get shit my own self." [sic] On 11/5/2022, Gardner mentions the "play" and the "situation". On the following call, Taylor mentioned messaging someone and Gardner told her, "Say you not tryin to make it hot, we got shit tryin to happen now." [sic] On 11/8/2022, Taylor told Gardner, "It's not gonna happen right now" and "It's gonna be about a couple of days." [sic] Gardner said, "That's cool." Taylor replied, "But everything is already ready." Based on my training and experience, Gardner and Taylor's conversations indicate a plan to traffic what is suspected to be a bag of heroin and 15 Suboxone strips into [Heritage Trail Correctional Facility] through an unknown female.

Dkt. 9-1 at 1-2. Transcripts attached to the Conduct Report support Lead Investigator Patton's description of the conversations between Mr. Gardner and Ms. Taylor. Dkt. 9-1 at 3-6.

Mr. Gardner was notified of the charge on November 9, 2022 at "13:45 pm," when he received a copy of the Conduct Report and the Screening Report. Dkts. 9-1 at 2, 9-2 at 1. A hearing was held on November 10, 2022. Dkt. 9-4. Mr. Gardner requested and received a lay advocate witness. Dkts. 9-2 at 1, 9-3. He did not request any witnesses, but did request copies of the transcripts of the phone calls mentioned in the Conduct Report. Dkt. 9-2 at 1. Mr. Gardner appeared at the hearing, pled not guilty, and stated: "I was not trying to conspire to traffic any drugs into facility." Dkt. 9-4 at 1. The hearing officer

3

considered staff reports, Mr. Gardner's statement, and the phone call transcripts and found that Mr. Gardner was guilty of offenses 111 and 113, conspiring to traffic "an unauthorized physical object to another person."  Dkts. 9-4, 9-6 at 2.  The hearing officer wrote: "Based on preponderance of evidence (staff's word over an I-I word, on a formal conduct); [Disciplinary Hearing Board] hereby finds the I-I guilty of the offense."  Dkt. 9-4.  The sanctions imposed included a 180-day loss of good-time credit, along with other non-custodial sanctions not relevant to this proceeding.  Dkt. 9-4.

Mr. Gardner appealed to the Facility Head and the Indiana Department of Corrections ("IDOC") Final Reviewing Authority, and both appeals were denied.  Dkts. 2 at 1-2; 2-1 at 5-6, 10-12, 20-21.  He then brought this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Dkt. 2.

### III.
### Analysis

Mr. Gardner raises three arguments in his Petition: (1) that he was denied an impartial hearing officer; (2) that he was not given 24 hours to prepare a defense and was not allowed to cross-examine Ms. Taylor; and (3) that the transcripts of the phone calls do not support the trafficking conviction.  Dkt. 2-1 at 1-8.  The Court addresses each argument in turn.

**A. Impartial Hearing Officer**

In support of his Petition, Mr. Gardner argues that the hearing only lasted three minutes and that the hearing officer did not read the three-page phone transcript in Mr. Gardner's presence.  Dkt. 2-1 at 1.  Mr. Gardner

asserts that "[t]his means he failed to impartially consider the totality of the circumstances, or he had already reviewed the evidence before holding the...hearing, and had a pre-determined mindset to find a Guilty Verdict." Dkt. 2-1 at 1. Mr. Gardner argues that due process required the hearing officer to review the evidence in his presence. *Id.*

The Respondent argues in his response that Mr. Gardner does not allege that the hearing officer was involved in the conduct or underlying investigation, or that the hearing officer had a disqualifying relationship with a witness. Dkt. 9 at 7. He asserts that there is no due process safeguard that "requires the decisionmaker to review documentary evidence in the prisoner's presence during a disciplinary hearing," and that the factfinder often reviews documentary evidence in advance of a hearing. *Id.* at 8.

Mr. Gardner did not address the Respondent's arguments in his reply. *See* dkt. 15.

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A sufficiently impartial decisionmaker is necessary to shield the prisoner from the arbitrary deprivation of his liberties. *See Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see also Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed,

5

the constitutional standard for impermissible bias is high. *Piggie*, 342 F.3d at 666. Hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Gardner did not have a due process right to have the hearing officer review the evidence – including the phone call transcripts – in his presence and the hearing officer's failure to do so does not indicate that he was not impartial. This ground does not provide a basis for relief.[2]

### B. Lack of Notice of Evidence and of Opportunity to Cross-Examination Ms. Taylor

Mr. Gardner argues that he was presented with new evidence at the hearing and requested a continuance to allow him to prepare a defense, and that cross-examining Ms. Taylor "would have allowed [the hearing officer] to see both sides of the situation." Dkt. 2-1 at 7. He asserts that "[f]ederal law [allows] confronting witnesses." *Id.*

Respondent argues that Mr. Gardner referred to the phone call transcripts as new evidence in his appeal, but the transcripts were attached to the Conduct Report which he received on November 9, 2022. Dkt. 9 at 9-10. The Respondent further notes that the Hearing Report does not reflect that Mr.

---

[2] Mr. Gardner argued in his appeal that it was inappropriate for the hearing officer to drive from Heritage Trail Correctional Facility to Putnamville Correctional Facility (where Mr. Gardner was transferred after he was charged, and where the hearing occurred) to preside over the hearing. Dkt. 2-1 at 10. This does not constitute a due process violation and does not provide a basis for relief.

Gardner requested a continuance of the hearing and that Mr. Gardner "has not shown that [the hearing] was held before 1:45 p.m., which would have been less than the required 24 hours."  *Id.* at 10.  The Respondent asserts that even if the hearing was held within 24 hours of Mr. Gardner being notified of the charges, any error was harmless because Mr. Gardner did not request Ms. Taylor as a witness and did not have the right to cross-examine her.  *Id.*  The Respondent argues further that any violation of IDOC policy or Indiana law is not grounds for habeas relief.  *Id.* at 11.

      Mr. Gardner argues that he requested that Ms. Taylor be a witness at the hearing so that he could cross-examine her and that Ms. Taylor "would have provided insight contrary to the [investigator's] conclusions, as [Ms.] Taylor and [Mr.] Gardner operate a pit bull breeding business, and although [Mr.] Gardner is incarcerated, it is important to continue the enterprise that helps keep food on the table."  Dkt. 15 at 2-3.  He asserts that he was immediately transferred from Heritage Trail Correctional Facility to Putnamville Correctional Facility after he received the Screening Report, so was unable to communicate with Ms. Taylor to "obtain information" and did not have proper access to the law library to prepare his defense. Dkt. 15 at 3-4.  He asserts that he "experienced the [IDOC] process of being charged, transferred, [and] found guilty – all within (less than) 24 hours."  *Id.* at 5.  Mr. Gardner requests that the Court "allow limited discovery" regarding the timing of his hearing and his access to Ms. Taylor.  *Id.*

Due process requires that an inmate be given advance "written notice of the charges…in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003); see *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). It is not clear from the Report of Disciplinary Hearing what time the hearing took place on November 10, 2022. *See* Dkt. 9-4. But even if it took place before 1:45 p.m., which would have been less than 24 hours from the time Mr. Gardner received notice of the charges, Mr. Gardner has not shown that he was prejudiced by not having had additional time to prepare for the hearing.

The only ground identified by Mr. Gardner in his insufficient notice argument is that he was unable to introduce Ms. Taylor's testimony. But Mr. Gardner indicated on the Screening Report that he did not wish to call any witnesses. Dkt. 9-2 at 1 (Screening Report signed by Mr. Gardner with a check on the box next to the statement, "I do not wish to call any witnesses"). While offenders have a limited due process right to call witnesses to testify at a disciplinary hearing, here there is no evidence that Mr. Gardner invoked that right. Furthermore, to the extent Mr. Gardner sought to call Ms. Taylor as an adverse witness, he had no right to confront or cross-examine her. *Wolff*, 418 at 567-68 (holding that inmates have no constitutional right to confrontation or cross-examination in prison disciplinary proceedings).

8

Finally, Mr. Gardner argues that had she testified, Ms. Taylor "would have provided insight contrary to the analyst (investigators) conclusions, as Taylor and Gardner operate a pit bull breeding business", dkt. 15 at 3. He does not, however, explain how Ms. Taylor's testimony would have undermined or contradicted Lead Investigator Patton's interpretation of the calls as discussing a drug transaction. And Ms. Taylor's affidavit, which cryptically states that investigators "were making assumptions", dkt. 20-1 at 2, similarly does not provide a basis for an alternative interpretation of the calls. While Mr. Gardner alludes to Ms. Taylor's "knowledge to [sic] events that occurred prior to Mr. Gardner's arrival at Heritage Trail that ultimately ended her employment at the facility and believed to be a material factor in the disciplinary action", dkt. 15 at 3, he does not provide any explanation of those events or how they are connected to the disciplinary charges in this case. Similarly, Mr. Gardner references what his and Ms. Taylor's testimony "would have been", dkt. 15 at 4, but does not provide any further explanation.

In sum, Mr. Gardner has not shown how Ms. Taylor's testimony would have aided his defense, so he has not shown he was prejudiced by her not testifying at his hearing. *Piggie*, 342 F.3d at 666. Moreover, any failure to give Mr. Gardner less than 24 hours' notice of the hearing would have been harmless error and therefore does not provide a ground for relief. *Id.* (harmless error doctrine applies to prison disciplinary cases).

9

The same analysis applies to Mr. Gardner's claims that he was immediately transferred to Putnamville Correctional Facility and did not have access to Ms. Taylor or an opportunity to build a defense using her testimony. As noted above, Mr. Gardner indicated on the Screening Report that he did not wish to call any witnesses, and he did not have the right to cross-examine Ms. Taylor. Accordingly, any issue with not having access to Ms. Taylor was harmless error.

Further, to the extent that Mr. Gardner argues that failing to give him 24 hours' notice was a violation of IDOC policy, the Court notes that prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008).

Finally, there is no merit to Mr. Gardner's argument that new evidence was presented at the hearing, and that he did not have time to prepare a defense. Mr. Gardner does not describe what he claims was "new evidence" presented at the hearing. To the extent he is referencing the phone call transcripts, they were not new evidence because they were attached to the

10

Conduct Report which he received the day before the hearing. *See* dkts. 9-1 at 2 ("Call transcripts attached", written in box titled, "Disposition of physical evidence, if any"); dkt. 9-1 at 3-6 (copies of transcripts of phone calls between Gardner and Taylor); dkt. 9-4. Moreover, the Conduct Report itself provides a detailed summary of the relevant portions of the calls, including the dates of the calls and quotations of the most relevant parts of the calls between Mr. Gardner and Ms. Taylor. Dkt. 9-1 at 1-2.

Mr. Gardner's claim that his due process rights were violated because he did not have sufficient notice of the hearing so he could not cross-examine Ms. Taylor or consider new evidence does not provide a ground for relief.

### C. Sufficiency of the Evidence

Mr. Gardner argues in his Petition that the phone call transcripts do not support the notion that he was trafficking drugs. Dkt. 2-1 at 8. He asserts that "[t]here are literally hours of other transcripts that could verify the language used in these provided transcripts concerns matters unrelated to prison," and that "[t]here is absolutely nothing said about [Heritage Trail Correctional Facility] in this evidence provided at [the] hearing used to find Petitioner guilty." *Id.* He contends that Lead Investigator Patton "has violated state laws defaming both [Ms. Taylor's] character and Petitioner's to get Petitioner shipped and to fire [Ms. Taylor]." *Id.*

The Respondent argues that the Conduct Report alone is some evidence of Mr. Gardner conspiring to traffic illegal drugs into the facility. Dkt. 9 at 13.

11

He notes that the transcripts reference picking up "dog food," which is slang for heroin; that Ms. Taylor and Mr. Gardner discussed how Ms. Taylor had obtained 15 items and they needed to make sure that the "dog food" and the 15 items were not in a "hot environment"; that Mr. Gardner was going to go with the "deal"; the timing of the "deal"; and how the "deal" was not going to happen as of their call on November 8, but was "still gonna happen." *Id.* at 13-14. The Respondent asserts that Lead Investigator Patton's identification of the plan to traffic illegal substances into the facility based on the phone call transcripts is "some evidence." *Id.* at 14.

Mr. Gardner does not address the Respondent's arguments in his reply. *See* dkt. 15.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

12

Under this standard, "courts 'are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.'" *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quoting *Hill*, 472 U.S. at 454); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) ("It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision."); *Ping v. McBride*, 888 F. Supp. 917, 922 (7th Cir. 1993) (stating that in a prison disciplinary case, it is not the proper function of the court "to reweigh conflicting evidence and to make credibility determinations") (citing *Viens v. Daniels*, 871 F.2d 1328 (7th Cir. 1989)).

Here, the phone call transcripts provide "some evidence" that Mr. Gardner and Ms. Taylor were engaged in a conspiracy to traffic drugs. Mr. Gardner was charged with violating Offense 111/113, "conspiracy to traffic." Dkt. 9-4. Offense 111 prohibits "[a]ttempting by one's self or with another person or conspiring or aiding and abetting with another person to commit any Class A offense." Dkt. 9-6 at 2. The Disciplinary Code defines "conspiracy" as "[t]wo (2) or more offenders or other persons planning or agreeing to commit acts which are prohibited by Department or facility rule, procedure or directive." Dkt. 9-7 at 3. Offense 113 prohibits "[g]iving, selling, trading, transferring, or in any other manner moving an unauthorized physical object to another person; or receiving, buying, trading, or transferring; or in any other

13

manner moving an unauthorized physical object from another person without the prior authorization of the facility warden or designee." Dkt. 9-6 at 2.

Mr. Gardner takes issue with the meaning of the conversations he had with Ms. Taylor, arguing that the two operate a pit bull breeding business which is why they were discussing "dog food." But Lead Investigator Patton applied his training and experience and concluded that "dog food" as used in the phone calls was meant to refer to heroin. Dkt. 9-1 at 1. *See United States v. Thurman*, 2017 WL 621758, at * 3 n.2 (N.D. Ill. Feb. 15, 2017) (noting that Government's expert witness testified that "dog food" is a code word for heroin). Lead Investigator Patton also focused on Mr. Gardner's and Ms. Taylor's discussion of making sure that the "dog food" and 15 items were not in a "hot environment." *Id.* Further, he noted in the Conduct Report Mr. Gardner's comments to "make sure everything goes smoothly," "see what she can handle," "I want it to be worth it," and "I'ma go with the deal unless yall came up with, you know what I'm sayin, unless yall two girls come up with something else," among other comments. *Id.*

The phone call transcripts, as interpreted by Lead Investigator Patton, provided the hearing officer with "some factual basis" for his conclusions and constituted "some evidence" that Mr. Gardner was conspiring with Ms. Taylor to traffic drugs. *McPherson*, 188 F.3d at 786. Mr. Gardner's argument that there was not sufficient evidence to find that he had committed Offenses 111 and 113 does not provide a basis for relief.

## IV.
## Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Gardner to the relief he seeks. Accordingly, Mr. Gardner's Petition for a Writ of Habeas Corpus, [2], is **DENIED** and the action **DISMISSED**. Judgment consistent with this Order shall now issue.

According to the IDOC website and the docket in one of Mr. Gardner's underlying criminal cases, it appears that Mr. Gardner was released from IDOC custody on probation with Vigo County Community Corrections. Since his release, Mr. Gardner has not updated his address with the Court. In an attempt to ensure that Mr. Gardner receives the Court's Order, the Court is sending it to Mr. Gardner at both his outdated address on the docket and at Vigo County Adult Probation so that the Probation Department may forward the Order to him or otherwise ensure his receipt of it.

**SO ORDERED.**

Date: 12/4/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

15

Distribution:

All electronically registered counsel

Jalien Gardner
250285
PUTNAMVILLE – CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy. 40
Greencastle, IN 46135

Jalien Gardner
Vigo County Adult Probation
120 S. 1st St.
Terre Haute, IN 47807